Narayanan **KRISHNAN**, for Narayanan
**DEVIPRASAD**, Plaintiff,

v.

Larry G. **MASSANARI**,[1] Defendant.

CIV.A. No. 98–2059(PLF).

United States District Court,
District of Columbia.

July 31, 2001.

---

1. Larry G. Massanari was named as Acting Commissioner of Social Security, effective March 29, 2001. He is hereby substituted as the named defendant, as this action is brought against the Commissioner in his official capacity. *See* Rule 25(d), Fed.R.Civ.P.

prasad, under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of the Social Security Administration denying his brother's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401–423. Mr. Deviprasad is not a United States citizen, but he lived and worked here from 1981 until 1991 when he became permanently disabled and was forced to return to India to be cared for by his brother. The Social Security Act prohibits payment of benefits to non-citizens who have resided outside the United States for over six months, except under certain circumstances. *See* 42 U.S.C. § 402(t). The Commissioner concluded that Mr. Deviprasad did not meet any of the exceptions to the prohibition against payment of benefits to non-resident non-citizens and denied him disability insurance benefits. The Court affirms the Commissioner's decision.

Stephen Kuperberg, Patrick F. Hofer, Hogan & Hartson, Washington, DC, for Plaintiff.

Doris Coles–Huff, Assistant U.S. Attorney, Washington, DC, for Defendant.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

Narayanan Krishnan brought this action on behalf of his brother, Narayanan Devi-

## I. BACKGROUND

### A. Statutory Framework

The Social Security Act generally denies non-citizens disability insurance benefits if they have resided outside the United States for more than six months. 42 U.S.C. § 402(t)(1); *see* 20 C.F.R. § 404.460(a). This general rule has several exceptions, however, and plaintiff argues that one of them applies to him, an exception set forth in 42 U.S.C. § 402(t)(4).[2] An "eligible nonresident," *see Ganem v. Heckler*, 746 F.2d 844, 845 (D.C.Cir.1984), for

2. 42 U.S.C. § 402(t)(4) states in relevant part: Subject to paragraph (11), paragraph (1) [the general denial of benefits provision] shall not apply to any benefit for any month if-

(A) not less than forty of the quarters elapsing before such month are quarters of coverage for the individual on whose

wages and self-employment income such benefit is based, or

(B) the individual on whose wages and self-employment income such benefit is based has, before such month, resided in the

purposes of Section 402(t)(4), is one who has lived in the United States for ten years or has earned 40 quarters of coverage.[3] Because it is agreed that plaintiff lived in the United States for only nine years and eight months, he would only fall under this exception if he earned 40 quarters of coverage. Plaintiff could also fall within an exception to the general rule without needing 40 quarters of coverage if he were a citizen of a "reciprocal" country or a "treaty" country. A reciprocal country is one that has a social insurance system of general application that pays periodic benefits to United States citizens who qualify for such benefits while residing outside of the reciprocal country. 42 U.S.C. § 402(t)(2); 20 C.F.R. § 404.460(b)(7). A treaty country is one where application of the general rule would violate a United States treaty obligation. 42 U.S.C. § 402(t)(3); 20 C.F.R. § 404.460(b)(6). It is undisputed that India is not a reciprocal country because it has been found to have no social insurance system of general application. 20 C.F.R. § 404.463(a)(7); Social Security Ruling 89–12 (Dec. 26, 1989). Nor is India a treaty country. *See* 20 C.F.R. § 404.463(b).

### B. Claimant's Work History and Impairment

Narayanan Deviprasad is a citizen of India. He first entered the United States on August 26, 1981 to pursue a masters degree in electrical engineering at Worcester (Massachusetts) Polytechnic Institute. While earning his masters degree, Mr. Deviprasad worked as a teaching assistant at the school, earning between $500 and $550 a month from September 1981 until May 1983 when he graduated. After receiving his masters degree, Mr. Deviprasad worked as a computer software engineer for various companies in the United States, beginning in September 1983.

In May 1986, Mr. Deviprasad was diagnosed with paranoid schizophrenia. Over the next five years, Mr. Deviprasad returned to India periodically for treatment and medication, only to suffer relapses of his mental illness after returning to work in the United States. Mr. Deviprasad has been in India continuously since April 25, 1991, where he is under the care of his elder brother, Narayanan Krishnan, who serves as his next friend in this action. His treating physician states that Mr. Deviprasad's condition is permanent and deteriorating.

### C. Procedural History

Mr. Deviprasad filed his initial application for disability insurance benefits with the Social Security Administration on May 22, 1993. (Tr. 29–32)[4] His application was

---

United States for a period or periods aggregating ten years or more,

\*    \*    \*    \*    \*    \*

except that subparagraphs (A) and (B) of this paragraph shall not apply in the case of any individual who is a citizen of a foreign country that has in effect a social insurance or pension system which is of general application in such country and which satisfies subparagraph (A) but not subparagraph (B) of paragraph (2), or who is a citizen of a foreign country that has no social insurance or pension system of general application if at any time within five years prior to the month in which the Social Security Amendments of 1967 are enacted (or the first month thereafter for which his benefits are subject to suspension under paragraph (1)) payments to individuals residing in such country were withheld by the Treasury Department under sections 3329(a) and 3330(a) of Title 31.

3. "A quarter of coverage is the basic unit of social security coverage used in determining a worker's insured status." 20 C.F.R. § 404.140(a). The number of quarters of coverage earned is based on the amount of wages paid in a calendar year. 20 C.F.R. § 404.143.

4. Citations to pages of the certified copy of the transcript of the administrative record,

denied because he was not a United States citizen and had resided outside the United States for more than six months. 42 U.S.C. § 402(t)(1)(A).[5] On reconsideration, his application was again denied. (Tr. 47–50) The Social Security Administration Administrative Law Judge agreed that Mr. Deviprasad was disabled because of his mental impairment, but concluded that "he did not meet any of the conditions that would permit payment of benefits outside the United States." (Tr. 47) The ALJ also found that Mr. Deviprasad did not meet any of the exceptions to the residency requirement. The ALJ's decision was upheld on administrative appeal. (Tr. 9–10, 22–27)

Having exhausted his administrative remedies, Mr. Krishnan filed this action here on behalf of his brother. After the Commissioner filed an answer, the Court appointed counsel for Mr. Krishnan.[6] During the initial briefing of the parties' cross-motions for summary judgment, Mr. Krishnan argued that Mr. Deviprasad had earned 40 quarters of coverage and therefore fell within an exception to the bar against paying disability benefits to non-citizens who reside outside the United States. The Commissioner then submitted evidence regarding Mr. Deviprasad's quarters of coverage that were not contained in the administrative record, and Mr. Krishnan submitted additional evidence to rebut the Commissioner's evidence. Believing that "the new evidence counsels in favor of additional agency proceedings," this Court remanded the case to the Commissioner "for further evaluation of all relevant evidence, and ... [to give plaintiff] the opportunity to submit additional evidence, to determine whether plaintiff has earned at least 40 quarters of coverage and is therefore entitled to receive benefits while living in India...." Order of September 17, 1999.

Nearly five months after remand, but before any further administrative hearing had been held, Mr. Krishnan moved to vacate the Court's remand order as contrary to law; he also renewed his motion for summary judgment. The following month, an ALJ conducted a hearing which Mr. Krishnan's counsel attended. After the hearing, the ALJ obtained a copy of Mr. Deviprasad's Social Security earnings records which showed that he had earned only 30 quarters of coverage. Mr. Krishnan did not attempt to further rebut this evidence. On April 18, 2000, the ALJ issued a new decision finding that Mr. Deviprasad had not earned 40 quarters of coverage and that he therefore did not meet the exception barring payment of disability benefits to non-citizens who reside outside the United States. (Tr. 84–91) In so ruling, the ALJ determined that Mr. Deviprasad's two years spent as a teaching assistant at Worcester Polytechnic Institute was not employment for purposes of disability insurance benefits and could not be counted in his quarters of coverage.

## II. STANDARD OF REVIEW

This Court must affirm the Commissioner's factual determinations so long as they are supported by substantial evidence in

---

filed by the Commissioner, are abbreviated throughout this opinion as "Tr. ___".

5. The transcript does not contain the initial determination, issued on October 10, 1994, but that determination is referenced in the claimant's request for reconsideration. (Tr. 36–38)

6. The Court wishes to express its appreciation to Patrick F. Hofer and the firm of Hogan & Hartson for their representation of plaintiff through the Court's Civil Pro Bono Panel.

the record and are not tainted by an error of law. *Smith v. Bowen,* 826 F.2d 1120, 1121 (D.C.Cir.1987). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). In determining whether the Commissioner's decision is supported by substantial evidence, the Court may not reweigh the evidence and "replace the [Commissioner's] judgment regarding the weight and validity of the evidence with its own." *Davis v. Heckler,* 566 F.Supp. 1193, 1195 (D.D.C.1983).

## III. DISCUSSION

Disability insurance benefits were denied to plaintiff because he is not a citizen of the United States and has resided outside the United States for more than six months and because he did not qualify for any exception to this statutory proscription. *See* 42 U.S.C. § 402(t)(1)(A). Plaintiff argues that the ALJ's decision to deny benefits is not supported by substantial evidence in the record because evidence of his work history in the administrative record during the ALJ's initial determination did not support a finding that he had earned less than 40 quarters of coverage. Plaintiff also argues that the residency requirement as it applies to him is unconstitutional.

*A. Evidence of Plaintiff's Work History*

■ Plaintiff argues that there was not "substantial evidence" in the record to support the ALJ's initial decision denying an award of benefits on the ground that plaintiff did not fall within an exception to the prohibition against payment of benefits to aliens residing outside the United States. Specifically, plaintiff asserts that he falls within the exception for individuals who have earned not less than 40 quarters of coverage. *See* 42 U.S.C. § 402(t)(4)(A); 20 C.F.R. § 404.460(b)(2). Plaintiff argues that the ALJ's decision should have been reversed and payment of disability benefits ordered because the only evidence in the record prior to remand showed that he had earned 40 quarters of coverage.

Upon the initiation of plaintiff's action in this Court, the administrative record was sparse. Specifically, the record did not include a print-out of plaintiff's earnings record—a standard exhibit in the administrative record of nearly every disability case. In his initial application, plaintiff identified his dates of employment as 1983 to 1991. (Tr. 30) When his application was denied, plaintiff offered a handwritten summary of his employment, approximate gross earnings and "Social Security Credits Earned" in support of his request for reconsideration before the Social Security Administration. (Tr. 44) This summary included plaintiff's wages earned at Worcester Polytechnic Institute, describing the work as an "Assistantship." (Tr. 39) The ALJ's initial determination made no specific factual determination as to plaintiff's quarters of coverage; stating only that he "does not meet any of the possible exceptions to the residency requirement." In view of this fact and plaintiff's handwritten summary submitted to the Social Security Administration, it was not error to remand the case for further factual development. Surely, on review of the Commissioner's decision the Court could not be expected to accept a claimant's handwritten summary in lieu of the administrative record or without permitting the Social Security Administration to consider it first.[7]

---

**7.** Reversal of the Commissioner's decision

and an order directing payment of disability

The Commissioner's decision after remand is supported by substantial evidence in the record as supplemented by evidence submitted during the remand. Plaintiff's earnings records show that he earned 30 quarters of coverage. (Tr. 266–282)[8] The ALJ considered plaintiff's handwritten summary of his additional work history, but rejected the evidence of wages earned as a teaching assistant during 1981 to 1983 as excluded from employment because it is not considered employment for Social Security coverage. *See* 20 C.F.R. §§ 404.1028, 404.1036. (Tr. 89)[9] The ALJ was willing to accept plaintiff's evidence of wages earned at Honeywell during 1983 to boost his quarters of coverage earned to 34, but—after excluding the teaching assistant wages under the pertinent regulations—still determined that plaintiff "earned considerably less than 40 quarters of coverage." (Tr. 90) On review of this determination, the Court concludes that there is substantial evidence in the record to support the ALJ's conclusion that plaintiff did not have 40 quarters of coverage for purposes of the exception to the general rule that disability insurance benefits are not paid to non-citizens who reside outside the United States. Since this is the only exception on which plaintiff now relies, the decision of the Social Security Administration must be affirmed.

## B. Plaintiff's Constitutional Challenges

Plaintiff argues that 42 U.S.C. § 402(t) unconstitutionally infringes upon his rights to equal protection and to substantive due process. To pass constitutional muster under the equal protection component of the Fifth Amendment's Due Process Clause, an official government action need only bear a rational relationship to a legitimate governmental purpose so long as no suspect or quasi-suspect class is involved and it does not impair a fundamental right. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439–40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Moore v. City of East Cleveland*, 431 U.S. 494, 500–06, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Plaintiff argues, however, that this Court should apply a "strict scrutiny" test because Section 402(t) interferes with his fundamental right to live with his family in India and because it discriminates on the basis of the suspect class of national origin. There is no basis in law for the Court to accept these arguments.

As to the first argument, the court of appeals recently summarized and applied the limitations on the fundamental right to familial relationships, stating:

The Constitution protects familial relationships from unwarranted government interference in at least two circumstances. First, parents have a right to

---

benefits in lieu of remand, as plaintiff argues this Court should have done, is appropriate only where the record in the case has been thoroughly developed and further administrative proceedings would merely delay the award of benefits. *Martin v. Apfel*, 118 F.Supp.2d 9, 18–19 (D.D.C.2000) (citing *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 44 (2nd Cir.1972)); *see also Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir.1983) (reinstatement of benefits appropriate when further administrative proceedings would serve no useful purpose). This was not such a case.

**8.** The Social Security Administration's earning records are evidence of an applicant's earning records. 20 C.F.R. § 404.803. The means to rebut this evidence is somewhat limited. 20 C.F.R. § 404.822.

**9.** This finding is further supported by the fact that plaintiff did not make contributions pursuant to the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. § 3101 *et seq.*, from his teaching assistantship pay. *See* Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Exh. 2 (Plaintiff's Earnings Statements from Worcester Polytechnic Institute).

maintain their relationship with their children. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that a state must support allegations of parental neglect with at least clear and convincing evidence before terminating the rights of parents in their natural child); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (striking down a law automatically making children of unwed fathers wards of the State upon the death of their mother). Second, family members have a constitutional right to make certain private decisions regarding family affairs, such as whether to procreate, *see Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, (1973) (abortion), *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (contraception), or whether to send children to public school, *see Pierce v. Soc'y of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

*Harbury v. Deutch,* 233 F.3d 596, 604–05 (D.C.Cir.2000). In denying Harbury's due process claim, the court of appeals refused to expand the familial relationship right to cases in which governmental action only incidentally impairs familial relationships and does not impair a parent-child relationship. *Id.* (quoting extensively from *Ortiz v. Burgos,* 807 F.2d 6, 9 (1st Cir. 1986)). Consistent with the circuit's decision in *Harbury,* this Court will not extend the protection afforded fundamental rights to a case like this one where the government has indirectly interfered with a non-parent-child relationship.

■ With respect to his second argument, that the Social Security Act has discriminated against him on the basis of his national origin and therefore that the decision of the Social Security Administration must be reviewed under strict scrutiny analysis, plaintiff recognizes that the Supreme Court's decision in *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), is among the controlling authorities. In *Mathews,* the Supreme Court upheld as constitutional the amendments to the Social Security Act that conditioned an alien's eligibility for Part B Medicare benefits on the alien's continuous residence in the United States for five years and admission for permanent residence. In doing so, the Supreme Court recognized that although the Fifth Amendment protects both citizens and resident non-citizens from the deprivation of life, liberty or property without due process of law, the scope of protection afforded by the Fifth Amendment is not the same for citizens and for resident non-citizens. *See Mathews v. Diaz,* 426 U.S. at 77–78, 96 S.Ct. 1883; *see also Nguyen v. Immigration and Naturalization Service,* —— U.S. ——, 121 S.Ct. 2053, 2059–64, 150 L.Ed.2d 115 (2001). Because "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government," the Supreme Court afforded the statute a deferential standard of review. *Mathews v. Diaz,* 426 U.S. at 81–82, 96 S.Ct. 1883.

■ Plaintiff seeks to distinguish *Mathews* on two grounds. First, he argues that the government in *Mathews* disputed the alien's entitlement to Medicare benefits whereas here defendant has admitted that plaintiff is entitled to disability benefits. Second, he argues that *Mathews* barred all aliens, not just aliens from certain countries as it has done in Section 402(t). Neither of these distinctions take this case outside of Congress' "responsibility for regulating the relationship between the United States and our alien visitors." Consequently, the limitation on benefits to alien non-residents in 42 U.S.C. § 402(t) must be upheld as constitutional so long as

·it bears a rational relationship to a legitimate governmental purpose. *See Rodriguez v. United States*, 169 F.3d 1342, 1347–48 (11th Cir.1999) (applying rational basis review in upholding limitations on aliens eligible to receive Supplemental Security Income).[10]

Plaintiff argues, however, that Section 402(t)(1) cannot survive even rational basis review because Congress' decision to pay benefits to citizens of certain countries and not others is "not properly tailored to effectuate any legitimate governmental purpose." In enacting Section 402(t)(1) in 1956, Congress explained "that some aliens have come to this country, served in covered employment for a short period, and have then returned to their native countries to live off their old-age and survivors benefits for the rest of their lives." H.Rep.No. 84–2133, at 2 (1956). Rather than simply denying benefits to all aliens, Congress decided "in the interest of fairness and comity ... to continue the payment of benefits to a citizen of a foreign country if that foreign country has a social insurance or pension system which permits payments to United States citizens in the event they leave such foreign country." *Id.*, at 2–3.[11]

Plaintiff points out that the statute does not exactly match its stated purpose. For example, if plaintiff currently resided in the United Kingdom, he would still not be entitled to payment of benefits even though the United Kingdom allows payments to eligible United States citizens who reside outside of the United Kingdom. More to the point here, Congress' concern about non-citizens who work for a short time and collect retirement benefits in their home country does not apply to plaintiff, who is seeking disability benefits, not retirement or survivors benefits. In contrast to the short-term aliens whom Congress' targeted for exclusion from Social Security benefits, plaintiff was essentially forced to return to India in spite of his desire to remain and work in the United States.

The fact that plaintiff was not among the class of aliens targeted by Section 402(t) does not undermine the rational relationship analysis.

[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it "is not made with mathematical nicety or because in practice it results in some inequality." "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific."

---

**10.** Plaintiff does not challenge the residency requirements imposed by Section 402(t). Residency requirements imposed by the Social Security Administration have been uniformly considered under rational basis review and upheld. *See Dumaguin v. Secretary of Health and Human Services*, 28 F.3d 1218, 1222 (D.C.Cir.1994). Rational basis review is generally applicable to a challenge regarding the denial of social security benefits. *Califano v. Aznavorian*, 439 U.S. 170, 174, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978); *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

**11.** As originally enacted, the exception to the general rule at issue here, Section 402(t)(4), did not include its own exception for citizens of a foreign country that have a social security system but does not pay benefits to eligible United States citizens who reside outside of the foreign country. This amendment was not added until 1968. *See Ganem v. Bowen*, 811 F.2d 1575, 1576 (D.C.Cir.1987); Pub.L. No. 90–248. § 162, 81 Stat. 821, 871 (1968). Because India has no social insurance or pension system of general application, this amendment is irrelevant.

*Heller v. Doe*, 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (internal citations omitted). Furthermore, the issue is not whether Congress articulated a rational basis for its decision, but whether there is one. Thus, in determining whether plaintiff has been denied equal protection of the law, this Court must decide only whether defendant now has offered a rational basis for its action and whether plaintiff has negatived every conceivable basis that might support its action. *See Steffan v. Perry*, 41 F.3d 677, 684 (D.C.Cir. 1994).

Prohibiting the payment of all Social Security benefits to certain non-citizens who do not reside in the United States bears a rational relationship to Congress' concern that the programs should primarily benefit citizens and certain non-citizens who have lived in the United States for a substantial period of time—ten years—or who have paid into the program for a substantial period of time—40 quarters—or who are citizens of a country that has a reciprocal rule or treaty regarding payment of social insurance benefits. Because the limitation imposed by Section 402(t) bears a rational relationship to these legitimate governmental interests, it does not violate the Due Process Clause of the Fifth Amendment.

### C. Plaintiff's Underlying Fairness Challenge

■ Underlying plaintiff's filings in both the administrative and these judicial proceedings over the past eight years is a plea for an exception to the eligibility rules because of the unique circumstances of his case.[12] The Court is mindful of the difficult position plaintiff found himself in

when he was diagnosed with schizophrenia. Had he stayed in the United States, plaintiff would have been entitled to disability benefits, but would have been unable to care for himself. He chose instead to return to India where he could be cared for by his brother but would lose disability benefits. Moreover, in both residency and in quarters of coverage, plaintiff was very close to falling within the exception allowing benefits found in 42 U.S.C. § 402(t)(4). Although plaintiff's situation is unusual, Congress has established certain criteria by law—40 quarters or ten years—and the application of any arbitrary line drawn between eligible and ineligible individuals "must produce some harsh and apparently arbitrary consequences." *Mathews v. Diaz*, 426 U.S. at 83, 96 S.Ct. 1883. Although the ALJ was sympathetic to plaintiff's claim, he was required to deny benefits because there is no hardship exception contained in Section 402(t). Because plaintiff has not identified any discretion on the part of the Commissioner to award benefits in close cases, this Court must affirm the denial of benefits in this case. The only available discretionary award is from Congress through a private bill.

An Order consistent with this Opinion is entered this same day.

### ORDER AND JUDGMENT

For the reasons set forth in an Opinion issued this same day, it is hereby

ORDERED that plaintiff's motions to vacate remand [# 34–1] and for summary judgment [# 34–2] are DENIED; and it is

FURTHER ORDERED that the decision of the Administrative Law Judge, dated April 18, 2000, is AFFIRMED and that

---

12. Plaintiff also argues that, at a minimum, the Social Security Administration should be required to return the amount he paid in FICA between 1984 and 1991 because he had no reasonable opportunity to benefit from its

disability insurance program. Plaintiff offers no legal support for this argument. Without clear authority to compel the Commission to reimburse plaintiff's FICA payments, the Court declines this request.

JUDGMENT is entered in favor of defendant. Any other pending motions are denied as moot. This is a final appealable order. *See* Fed. R.App. P. 4(a).

SO ORDERED.